Filed 8/29/22; Certified for Publication 9/20/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

CHARLOTTE KERNAN,

  Plaintiff and Appellant,

v.

THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,

  Defendant and Respondent.

A162750

(San Francisco City & County Super. Ct. No. CGC-18-564062)

Plaintiff Charlotte Kernan sued defendant Regents of the University of California for medical malpractice after she delivered a stillborn baby at Zuckerberg San Francisco General Hospital (the hospital).[1] She appeals from the judgment after the trial court granted summary judgment to defendant on the basis that her action was time-barred under the one-year statute of limitations set forth in Code of Civil Procedure section 340.5.[2]

---

[1] Zuckerberg San Francisco General Hospital is a partner with the University of California San Francisco, which is itself part of the Regents of the University of California.

[2] Subsequent statutory references are to the Code of Civil Procedure unless otherwise specified.

1

Plaintiff argues (1) that there are triable issues of fact as to whether her action is time-barred, and (2) that there is disputed evidence as to the date of her fetus's death, such that a reasonable juror could find her claim timely. We agree with her first argument and therefore need not reach the second. We shall reverse.

## BACKGROUND

### *Factual Background*

On November 4, 2016, plaintiff was 39 weeks pregnant when she went to the hospital for an External Cephalic Version (ECV), a procedure to rotate her healthy fetus from a breech position to a head-first position. Doctors recorded the ECV as successful and monitored the fetal heartbeat for 40 minutes following the procedure. There was no indication of any problem and the post-procedure fetal monitoring was considered "reassuring." Later that night, following her discharge from the hospital, plaintiff could not detect any fetal movement.

The next day, November 5, 2016, plaintiff returned to the hospital because she continued not to detect any fetal movement. Upon performing an ultrasound, doctors informed plaintiff that there was no fetal heartbeat and that she had suffered an intrauterine fetal demise (IUFD). The doctors told plaintiff and noted in the medical records that they could not determine the etiology of the fetal death. They also noted in plaintiff's records that nothing in the literature indicated an association between ECV procedures and fetal demise.

2

The doctors induced labor on November 5, 2016, and after 30 hours of labor, plaintiff delivered a stillborn baby on November 7, 2016. The delivery doctor, Dr. Juan Vargas, told plaintiff that upon initial inspection, the baby, placenta, and cord all appeared healthy and he could not see any indicators as to why plaintiff's baby died.

According to the hospital records, on November 5, 2016, plaintiff debated whether to have an autopsy performed because of concern that it would delay her child's Muslim burial service. Plaintiff denies discussing an autopsy that day, but in any event, her doctors explained that autopsies are often unsuccessful in elucidating the underlying cause of an IUFD, although they may provide families with peace of mind. At some point, plaintiff decided to order an autopsy, and she worked with the hospital to find a mortuary that would accommodate her needs.

Dr. Vargas offered to discuss the autopsy report with plaintiff after it was completed. After some months of delay due to Dr. Vargas not responding to plaintiff's requests to review the autopsy report with her, plaintiff met with a different doctor, Dr. Kerns, on July 10, 2017, to review the baby's autopsy results. During that meeting, plaintiff learned that various doctors had reviewed and discussed her case during a morbidity and mortality conference at the hospital, but Dr. Kerns refused to answer plaintiff's questions about what had been said during the conference.[3] According to plaintiff, she first became subjectively

---

[3] Plaintiff understood that the hospital held morbidity and mortality conferences when an unusual death occurred.

3

suspicious that medical negligence had caused her baby's death during her July 10, 2017, meeting with Dr. Kerns.

### *Procedural Background*

On November 6, 2017, plaintiff served notice of her intention to commence an action against defendant pursuant to section 364. Within 90 days, on February 2, 2018, she filed her complaint alleging that defendant's medical negligence caused her fetal demise.

Defendant moved for summary judgment, arguing that the action was time-barred under section 340.5's one-year statute of limitations because the limitations period commenced on November 5, 2016 when plaintiff was informed of the IUFD, inquired into the etiology of the fetal death, and requested an autopsy. The trial court granted defendant's summary judgment motion on the basis that plaintiff was on inquiry notice as a matter of law when she learned of the fetal death on November 5, 2016, one day after the ECV procedure.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (§ 437c, subd. (c).) A party meets "his or her burden of showing that a cause of action has no merit if the party has shown . . . that there is a complete defense to the cause of action." (§ 437c, subd. (p)(2).) If defendant meets its initial burden, the burden shifts to plaintiff to show "that a triable issue

4

of one or more material facts exists as to the cause of action or a defense thereto." (§ 437c, subd. (p)(2).) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

We review an order granting summary judgment de novo, considering the admissible evidence set forth in the moving and opposing papers. (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 717.) "We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." (*Ibid.*)

## II.    Statute of Limitations – Governing Legal Principles

Statutes of limitations "protect defendants from the stale claims of dilatory plaintiffs" by " 'prescrib[ing] the periods beyond which' a plaintiff may not bring a cause of action." (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 395.) "The statute of limitations operates in an action as an affirmative defense." (*Id.* at p. 396.)

Plaintiff's claim for medical negligence is governed by section 340.5, which provides in relevant part: "In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or *one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury,*

5

whichever occurs first." (§ 340.5, italics added.) "[T]he term 'injury,' as used in section 340.5, means both 'a person's physical condition *and* its "negligent cause." ' " (*Gutierrez v. Mofid* (1985) 39 Cal.3d 892, 896.)

"The delayed discovery rule has been applied in 'cases where it is manifestly unjust to deprive plaintiffs of a cause of action before they are aware that they have been injured.' [Citation.] The rule protects a plaintiff who is ' "blamelessly ignorant" ' of his cause of action." (*Brisbane Lodging, L.P. v. Webcor Builders, Inc.* (2013) 216 Cal.App.4th 1249, 1257.) "Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by *wrongdoing*." (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110, italics added (*Jolly*); *Knowles v. Superior Court* (2004) 118 Cal.App.4th 1290, 1298–1299 ["*Jolly*'s discussion of the discovery rule applies to actions involving section 340.5"].) "If the plaintiff has notice or information of circumstances that would put a reasonable person on inquiry notice, the limitation period is activated." (*Brewer v. Remington* (2020) 46 Cal.App.5th 14, 24.)

The discovery rule thus "sets forth two alternate tests for triggering the limitations period: (1) a subjective test requiring actual suspicion by the plaintiff that the injury was caused by wrongdoing; and (2) an objective test requiring a showing that a reasonable person would have suspected the injury was caused by wrongdoing. [Citation.] The first to occur under these two tests

begins the limitations period." (*Kitzig v. Nordquist* (2000) 81 Cal.App.4th 1384, 1391.)

Section 364 is also pertinent here. That statute, which requires notice of intention to commence a medical negligence action, provides: "If the notice is served within 90 days of the expiration of the applicable statute of limitations, the time for the commencement of the action shall be extended 90 days from the service of the notice." (§ 364, subds. (a), (d).) Plaintiff served her notice of intent to sue on November 6, 2017, and filed her complaint within 90 days from that date; the parties therefore agree that her action was timely under sections 364 and 340.5 if the limitations period commenced on or after November 6, 2016. Plaintiff's action was untimely and defendant was entitled to summary judgment if, as the trial court found, the limitations period commenced as a matter of law on November 5, 2016—the date plaintiff learned of the fetal death.

## III.   Analysis

On this record and under the legal principles set forth above, there is a triable issue of fact regarding the triggering of the limitations period. We examine the subjective and objective prongs of section 340.5's discovery rule in turn. (*Kitzig v. Nordquist, supra,* 81 Cal.App.4th at p. 1391 [subjective and objective tests for triggering limitations period under section 340.5].)

### A. Subjective Prong of Section 340.5

Plaintiff states that she first suspected defendant's wrongdoing when she met with Dr. Kerns on July 10, 2017.

7

Defendant argues, however, that plaintiff subjectively suspected medical negligence on November 5, 2016, because she ordered an autopsy that day. We are unpersuaded by defendant's contention.

First, contrary to defendant's argument below and on appeal, the hospital records do not establish that plaintiff ordered an autopsy on November 5, 2016, the day she learned of the IUFD. The medical notes state that although plaintiff was "intersted [sic] in an autopsy and any additional blood tests that might elucide [sic] the underlying cause" of the fetal death, plaintiff was still undecided about whether to order an autopsy as of 10:41 p.m. on November 5, 2016.

Second, in her supplemental declaration in opposition to defendant's motion for summary judgment, plaintiff denied even discussing an autopsy on November 5, 2016, let alone requesting one.[4] Plaintiff stated that on the day she learned of her baby's

_____

[4] Defendant asserts that plaintiff's supplemental declaration was untimely filed and therefore procedurally prohibited. Defendant waived this objection, however, by not raising it at the summary judgment hearings below. (§ 437c, subd. (b)(5).) In any event, the trial court did not abuse its discretion by accepting plaintiff's supplemental declaration because defendant suffered no prejudice from the admission of this evidence. (*Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 765 [trial court may permit late papers in the interests of justice].) In her opposition to defendant's motion for summary judgment, plaintiff argued that she did not suspect medical negligence until July 10, 2017. Defendant addressed this argument in its reply to plaintiff's opposition brief, but asserted that plaintiff cited no evidence in support of her argument. Plaintiff's supplemental declaration simply provided evidentiary

8

death, she was in no shape to talk to anyone about anything, nor was she thinking far enough ahead to order an autopsy. Whether plaintiff in fact ordered an autopsy on November 5, 2016, was therefore very much in dispute.

Moreover, on November 5, 2016, doctors informed plaintiff that the cause of her IUFD was unknown, and that they would "provide an array of tests in the hopes of finding an etiology." Dr. Vargas similarly told plaintiff on the day she delivered the stillborn that although an autopsy might not elucidate an etiology for the IUFD, it could provide "piece [sic] of mind." Thus, even assuming plaintiff requested an autopsy on November 5, 2016, a reasonable trier of fact could conclude that plaintiff did so to learn information about the reason for her baby's death and to seek closure, not because she subjectively suspected defendant's wrongdoing.

In addition, after plaintiff learned of the fetal death on November 5, 2016, she remained under her doctors' care and delivered the stillborn baby at the hospital on November 7, 2016. She also continued to work with the hospital to obtain the autopsy and the autopsy review. A reasonable trier of fact could infer from these actions that plaintiff continued to trust the hospital even after learning of the IUFD, undermining defendant's contention that plaintiff subjectively suspected defendant's negligent performance of the ECV procedure on the day she learned her baby had died.

---

support for the argument defendant had already addressed in its reply.

9

Accordingly, defendant fails to establish that the one-year statute of limitations was triggered by plaintiff's actual, subjective suspicion of wrongdoing on November 5, 2016. (*Graham v. Hansen* (1982) 128 Cal.App.3d 965, 972-973 ["If plaintiff believes because of injuries she has suffered that someone has done something wrong," she is on actual notice, and the statutory period begins]; *Dolan v. Borelli* (1993) 13 Cal.App.4th 816, 820, 823 [one-year statute of limitations began running when plaintiff believed something had gone wrong and doctor had performed her surgery improperly].)

**B. Objective Prong of section 340.5**

Defendant also contends that plaintiff's action is time-barred under the objective test because the only reasonable inference from the facts is that plaintiff should have suspected on November 5, 2016, that the IUFD was caused by defendant's wrongdoing. We disagree.

The ECV was performed on the morning of November 4, 2016 . It was considered uncomplicated and successful. Doctors monitored a "reassuring" fetal heartbeat for 40 minutes after the procedure.

After not feeling fetal movement beginning on the night of November 4, 2016, plaintiff returned to the hospital on November 5, 2016 and was told that she had suffered an IUFD with an unknown cause.

As of November 6, 2016, the etiology of the fetal demise remained unclear . The medical records on that date state that "ECV is not shown in literature to be assoc[iated] with fetal

10

demise." On November 7, 2016, the day plaintiff delivered the baby, Dr. Vargas told her that the stillborn baby, placenta, and cord all looked healthy, and he did not see any indication as to why the baby had died. The autopsy report, dated November 8, 2016, found no specific cause for the fetal demise and noted that "[i]n many cases, it is difficult to be certain of the etiology of stillbirth."

"[P]laintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 808.) However, " '[t]he mere fact that [a medical] operation does not produce hoped-for results does not signify negligence and will not cause commencement of the statutory period.' " (*Kitzig v. Nordquist, supra,* 81 Cal.App.4th at p. 1392.) Rather, "[w]hen there has been a belated discovery of the cause of action, the issue whether the plaintiff exercised reasonable diligence is a question of fact for the court or jury to decide. The drastic remedy of summary judgment may not be granted unless reasonable minds can draw only one conclusion from the evidence." (*Enfield v. Hunt* (1979) 91 Cal.App.3d 417, 419–420.)

The hospital's records demonstrate that reasonable minds could differ as to whether plaintiff should have suspected negligent performance of the ECV on November 5, 2016, the day she learned she had suffered an IUFD. The November 4, 2016 ECV initially appeared uncomplicated and successful. On

11

November 5, 2016, plaintiff's doctors did not know the cause of the IUFD, and as of November 6, 2016, they remained unaware of any association between ECV procedures and fetal demise. Given that medical professionals did not suspect wrongdoing, and given that defendant's autopsy report corroborates plaintiff's understanding that fetuses sometimes die in utero for unknown reasons, we cannot say that reasonable minds could draw only one conclusion—that plaintiff should have suspected defendant's wrongdoing on November 5, 2016.

In sum, defendant's evidence does not establish as a matter of law that the limitations period commenced on November 5, 2016.

## DISPOSITION

We reverse the grant of summary judgment on statute of limitations grounds. Plaintiff shall recover her costs on appeal.

BROWN, J.

WE CONCUR:

POLLAK, P. J.
GOLDMAN, J.

*Kernan v. Regents of the University of California* (A162750)

12

Filed 9/20/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CHARLOTTE KERNAN,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>    Defendant and Respondent. | A162750<br><br>(San Francisco City & County Super. Ct. No. CGC-18-564062) |

THE COURT:

    The opinion in the above-entitled matter filed on August 29, 2022, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.


Date:  September 20, 2022                                   POLLAK, P. J.

| | |
|---|---|
| Trial Court: | San Francisco City & County Superior Court |
| Trial Judge: | Hon. Ethan P. Schulman |
| Counsel: | Bravo Law Offices, Joseph K. Bravo for Plaintiff and Appellant. |
| | Cole Pedroza LLP, Kenneth R. Pedroza, Cassidy Davenport; Craddick, Candland & Conti, Ann H. Larson for Defendant and Respondent. |