Filed 12/27/22  Shapiro v. Financial Services Vehicle Trust CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SERGIO SHAPIRO,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>FINANCIAL SERVICES VEHICLE TRUST et al.,<br><br>Defendants and Respondents. | B305911<br><br>(Los Angeles County Super. Ct. No. BC688705) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard E. Rico, Judge.  Affirmed.

Niddrie Addams Fuller Singh, Rupa G. Singh; Leech Tishman Fuscaldo & Lampl, Fadi K. Rasheed for Plaintiff and Appellant.

Caley & Associates, Rebecca A. Caley, Christopher M. Domin for Defendant and Respondent BMW of North America, LLC.

_____

Sergio Shapiro filed a complaint against BMW of North America LLC (BMW or BMW NA) alleging invasion of privacy and related causes of action arising from the presence of tracking devices on a leased vehicle. The trial court granted BMW's motion for summary judgment on the ground that the only information BMW collected was the vehicle's mileage, in which a lessee has no privacy interest. We affirm.

## BACKGROUND

**A.** **Shapiro's Lease and the Prior, Lessor's Lawsuit**

On January 30, 2012, Botavia Energy LLC, through Shapiro, its sole member, leased a 2012 BMW 750i (2012 BMW or the leased vehicle) for a three-year term with a 30,000 mileage allowance. Shapiro personally guaranteed the lease and was the primary driver. Defendant BMW of North America, LLC (BMW) oversaw the engineering, design, technology, and customer service for BMW cars leased in the United States.

Botavia Energy returned the leased vehicle to the dealer on April 14, 2015, with the odometer showing it been driven 33,347 miles. Shapiro attested to the accuracy of the mileage to the best of his knowledge and subject to fines or imprisonment for a false statement.

In 2015, the lessor, Financial Services Vehicle Trust (Financial Services Trust), sued Botavia Energy and Shapiro for odometer tampering under state and federal law. After a bench trial, Botavia Energy and Shapiro were found liable for all asserted odometer tampering claims, and ordered to pay damages, attorneys' fees, and costs totaling $427,840.90. Our colleagues in Division Two affirmed the judgment, which has been paid. (*Fin. Servs. Vehicle Trust v. Botavia Energy LLC* (May 1, 2019, B285699) [nonpub. opn.].)

2

**B. Current Lawsuit**

After entry of judgment against him and Botavia Energy, Shapiro sued BMW, Financial Services Trust (the lessor), and BMW Financial Services NA (the lease servicing agent) for invasion of privacy, alleging that devices attached to the leased vehicle had enabled defendants to monitor Shapiro's location and movement without his consent.

The trial court dismissed with prejudice all claims against Financial Services Trust and BMW Financial Services NA due to Shapiro's failure to file a compulsory cross-complaint against them in the prior, odometer tampering action. After rulings on demurrer, the operative complaint asserted causes of action against BMW for invasion of privacy, electronic tracking in violation of Penal Code section 664.7, intrusion upon seclusion, and civil conspiracy.

**C. Summary Judgment**

**1. Motion**

BMW moved for summary judgment or adjudication, arguing it never tracked Shapiro's or the car's location or movements.

In support of the motion, Heini Schulz, BMW's ConnectedDrive Services manager, declared the leased 2012 BMW was equipped with a software program called the BMW Assist Safety Plan (BMW Assist), which could track the vehicle's location under three triggering events: (1) If the customer pushed a dashboard "SOS" button seeking emergency assistance; (2) if the Automatic Collision Notification (ACN) system sensed a collision; and (3) if the vehicle was stolen, at which time BMW would provide the vehicle's location to law enforcement authorities only.

3

Luis Holguin, BMW's customer support engineer, declared that none of these triggering events occurred while Shapiro leased the 2012 BMW.  BMW also offered Shapiro's deposition testimony that none of the triggering events occurred.

Schulz and Holguin declared that BMW Assist included a fourth information transmission capability, called "Teleservice," which transmits, through local cell towers to BMW's servers, performance and service information (called FASTA data) from various sensors when they reach certain mileage benchmarks.  However, unlike the three emergency services, *ante*, Teleservice did not record and could not transmit the vehicle's location.

As Holguin put it, with Teleservice, "computer sensors throughout the Vehicle record[] performance information about the Vehicle's component parts and systems.  Upon reaching certain mileage benchmarks perceived by the Vehicle sensors, Teleservice transmits performance and maintenance notifications, such as low oil or brake replacement warnings, to a BMW NA data server through wireless cell phone technology.  After Teleservice transmits a maintenance notification to BMW NA's server, BMW NA then forwards said maintenance notification to the customer's local authorized BMW dealer who may then contact the customer for recommended service."

BMW attached as exhibit 11 to its motion the 2012 BMW's Teleservice report, which reflected numerous performance and service notifications during Shapiro's lease term but no GPS information.

### 2.  Opposition

In opposition to BMW's motion, Shapiro argued that the 2012 BMW's Teleservice system illegally tracked his location using GPS.

In support of the opposition, Sergey Chuboksarov, a motorcycle expert working for BMW Motorrad, stated in an unsworn declaration that he worked "for BMW Group." When BMW objected that the declaration was unsworn, Shapiro filed a sworn declaration in which Chuboksarov retracted his claim to work "for" BMW, now declaring only that he worked "with" BMW.

Chuboksarov stated that "as a BMW Tech" he had access to "Dealerspeed.net portal" (DSCnet), of which he was an experienced user. He "spent more than 150 hours" researching and preparing his report, during which he compared unspecified documents provided by Shapiro about the 2012 BMW against DSCnet records, using similar records about a "donor car" as a control. Chuboksarov declared that although he was able to obtain full DSCnet records on the donor car, "there was no available information about" the 2012 BMW in DSCnet. He stated, "I think that the reason is a system glitch or BMW Group NA made the history of that car fully classified and confidential."

Chuboksarov stated that using an electronic "technical request," designated "Technical Request (Campaign ID: TSR_F01_US_MILAGE)," BMW could cause a vehicle to transmit information to servers in Germany. Employing a similar technique, he accessed data transmitted from the donor car's COMbox unit and Car Infotainment Computer to BMW's servers. That data included not only standard information such as mileage but also the donor car's GPS coordinates. Although the data had been transmitted to BMW's servers, an inquiry to

DSCnet found no GPS location data in the donor car's FASTA information.[1]

Chuboksarov's statement contained several undefined terms and unexplained processes. He explained neither the functions of the COMbox and Car Infotainment Computer nor how they aided in GPS data collection. Neither he nor Shapiro have ever explained what DSCnet is or how it functions. Although Chuboksarov stated that Teleservice "is a part of" the software installed on the Car Infotainment Computer (which also had a built-in radio, CD/MP3/DVD player, and GPS and SIM cards), he did not explain whether the GPS data transmitted from this computer came from the Teleservice component of BMW Assist or from one of the other three components.

Chuboksarov further stated that he wrote a program to imitate a BMW technical request. Although normally GPS coordinates are transmitted only if the vehicle is stolen or involved in a collision, a special request made with a correct

---

[1] We paraphrase Chuboksarov's statement for clarity. His actual statement was: "Memory of transferring data under Technical Request (Campaign ID: TSR_F01_US_MILAGE) from the vehicle systems in the donor car was found. I extracted and gathered metadata from the COMbox unit and Car Infotainment Computer (CIC). I found that there was standard information within diagnosed units, car mileage, integration level info and the GPS coordinates, the l[at]itude and longitude of the car. All data transmission addressed to the BMW NA servers. A copy of the data transmission was transferred directly to the main BMW Group server in Germany. At the same time I can confirm that there is no GPS location of the vehicle in FASTA info or in Vehicle history information available on DSCnet, but at the same time it was sent to BMW Group."

security certificate can cause the vehicle to transmit this information even in the absence of a collision. Using his program, Chuboksarov was able to induce the donor car's *Teleservice system* to transmit the vehicle's GPS coordinates.[2]

In sum, liberally construing this evidence in the light most favorable to Shapiro, Chuboksarov declared that contrary to representations made by Shultz and Holguin, the 2012 BMW's Teleservice system could transmit GPS information to BMW's servers even in the absence of a collision or theft.

Shapiro also offered in opposition to summary judgment a copy of a "BMW Assist Subscriber Agreement," which requires a lessee to consent to the electronic collection and use of the location and movement data to be collected through BMW Assist. The agreement provided:

"YOU CONSENT TO WIRELESS COMMUNICATION BEING CONDUCTED IN YOUR VEHICLE TO ENABLE OUR SERVICE PROVIDERS TO DELIVER THE BMW ASSIST SERVICES TO YOU AND OCCUPANTS IN YOUR VEHICLE. YOU ALSO CONSENT TO THE COLLECTION AND USE OF THE INFORMATION AS SPECIFIED HEREIN . . . ."

---

[2] Again, we paraphrase. Chuboksarov's actual statement was: "I write an emulation program to imitate request to the car like from BMW Group Teleservice similar to Technical Request (Campaign ID: TSR_F01_US_MILAGE) to obtain GPS location of the car. Normally GPS coordinates transmits only after vehicle crash or theft, but under special request with correct security certificate, GPS location can be transmitted without any accident accruing. [¶] My research shows that [technical request] TSR_F01_US_MILAGE did have GPS location information, within transmission."

Although Shapiro refused to consent to the agreement, he argued that BMW Assist admitted ability to monitor the 2012 BMW's location and movement raised a triable issue as to whether the program actually monitored the vehicle's location and movement and transmitted data on those movements to third parties. He also argued that monitoring the vehicle alone constituted an invasion of privacy even if no location or movement data was transmitted to third parties.

Shapiro also offered the deposition testimony of Rainer Wargitsch, BMW's person most knowledgeable about a "2011 Campaign" to activate computer systems embedded in certain BMW series models in order to extract GPS coordinates and other vehicle data to ferret out odometer tampering. Wargitsch admitted that the 2012 BMW's Teleservice report showed that mileage data was retrieved every 36,000 seconds (about once a month), but stated that the data underlying the mileage report was unavailable.

Wargitsch admitted that he learned of the 2011 Campaign only a few weeks before he was deposed, and was instructed by BMW not to answer questions about proprietary documents or outside vendors or consultants affiliated with Teleservice technology. Shapiro argued that Wargitsch's lack of expertise and preparation showed that BMW was covering up a scheme to illegally track and retrieve mileage and movement information from its leased vehicles. It also argued that Wargitsch's failure to produce requested documents or answer "proper" deposition questions "should alone doom" BMW's summary judgment motion. However, Shapiro never moved to compel further responses or to continue the summary judgment hearing.

Finally, Shapiro offered his own declaration, in which he explained what Chuboksarov had told him about his research.

### 3. Objections

Shapiro filed several objections to the qualifications of BMW's declarants, all of which the trial court flatly overruled.

The trial court sustained BMW's objections to Chuboksarov's entire declaration on the ground that he failed to establish his expertise in extracting and analyzing data from BMW's servers, and in any event the best evidence rule would require that Shapiro submit copies of the extracted data rather than simply Chuboksarov's assertions about it.

The trial court also sustained BMW's hearsay objections to those portions in the Shapiro declaration in which he related statements Chuboksarov made to him.

### 4. Ruling

The trial court found that even if Chuboksarov's declaration was credited, it created no triable issue as to whether BMW tracked Shapiro's location because his only substantive statement on the issue was that BMW's Teleservice "did have GPS location information," not what that information consisted of nor under what circumstances it transmitted nor whether it tracked Shapiro's location. The court similarly found that nothing adduced in the Wargitsch deposition indicated that BMW tracked or transmitted the location of the 2012 BMW.

The court found no triable issue existed as to Shapiro's claims for invasion of privacy or intrusion upon seclusion because a driver has no reasonable expectation of privacy in the bare fact of the number of miles a vehicle has been driven each month, even if those mileage readings are transmitted without the driver's knowledge.

The court found no triable issue as to Shapiro's claim for violation of Penal Code section 637.7 because (1) no tracking device was "attached" to the 2012 BMW within the meaning of that statute, and (2) mileage data was transmitted to BMW not to track Shapiro's location but to determine the vehicle's movement characteristics. And the court found that Shapiro's claim for civil conspiracy failed for want of an underlying civil wrong.

The court noted that in his memorandum of points and authorities opposing summary judgment Shapiro requested a continuance. But, the court found, "Plaintiff has had six months to gather the evidence he needed. The fact [that his] Opposition hinged on a declaration which was fatally defective in several respects is strong evidence that additional time would not change the result."

The court granted BMW's motion for summary judgment, awarded BMW its prevailing party costs, and entered judgment.

## DISCUSSION

Shapiro contends summary judgment was improper because triable issues exist as to (1) whether BMW illegally tracked the 2012 BMW and (2) whether he consented to activate the BMW Assist tracking software. We disagree.

## A. Legal Principles

As noted above, Shapiro alleges causes of action for invasion of privacy, intrusion upon seclusion, and violation of Penal Code section 637.7.

The elements of a claim for invasion of privacy are "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy." (*Hill v. National*

10

*Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 39-40 (*Hill*).) A claim for invasion of privacy based on an intrusion upon seclusion requires (1) intrusion into a private place, conversation or matter, in (2) a manner highly offensive to a reasonable person. (*Shulman v. Group W Productions, Inc.* (1998) 18 Cal.4th 200, 231.) The considerations are "(1) the nature of any intrusion upon reasonable expectations of privacy, and (2) the offensiveness or seriousness of the intrusion, including any justification and other relevant interest." (*Hernandez v. Hillsides, Inc.* (2009) 47 Cal.4th 272, 288.)

"Whether a legally recognized privacy interest is present in a given case is a question of law to be decided by the court. [Citations.] Whether plaintiff has a reasonable expectation of privacy in the circumstances and whether defendant's conduct constitutes a serious invasion of privacy are mixed questions of law and fact. If the undisputed material facts show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law." (*Hill, supra*, 7 Cal.4th at p. 40.)

"A defendant may prevail in a state constitutional privacy case by negating any of the three elements just discussed or by pleading and proving, as an affirmative defense, that the invasion of privacy is justified because it substantively furthers one or more countervailing interests. The plaintiff, in turn, may rebut a defendant's assertion of countervailing interests by showing there are feasible and effective alternatives to defendant's conduct which have a lesser impact on privacy interests. . . . [¶] The existence of a sufficient countervailing interest or an alternative course of conduct present threshold questions of law for the court. The relative strength of

11

countervailing interests and the feasibility of alternatives present mixed questions of law and fact.  Again, in cases where material facts are undisputed, adjudication as a matter of law may be appropriate." (*Hill, supra,* 7 Cal.4th at p. 40.)

Penal Code section 637.7 provides in pertinent part:  "(a) No person or entity in this state shall use an electronic tracking device to determine the location or movement of a person.  [¶] . . . [¶]  (d)  As used in this section, 'electronic tracking device' means any device attached to a vehicle or other movable thing that reveals its location or movement by the transmission of electronic signals.  [¶]  (e)  A violation of this section is a misdemeanor."

Penal Code section 637.7 confers no private right of action but can be probative as to a driver's reasonable expectations of privacy and the relative strength of countervailing interests.

## B.    Summary Judgment

A trial court properly grants summary judgment " 'if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'  (Code Civ. Proc., § 437c, subd. (c).)  A defendant may establish its right to summary judgment by showing that one or more elements of the cause of action cannot be established or that there is a complete defense to the cause of action.  (Code Civ. Proc., § 437c, subd. (p)(2).)" (*Neiman v. Leo A. Daly Co.* (2012) 210 Cal.App.4th 962, 967.)  "Once the moving defendant has satisfied its burden, the burden shifts to the plaintiff to show that a triable issue of material fact exists as to each cause of action.  [Citation.]  A triable issue of material fact exists where 'the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the

12

motion in accordance with the applicable standard of proof.' " (*Ibid*.)

On appeal, we apply an independent standard of review to determine whether a trial is required—whether the evidence favoring and opposing the summary judgment motion would support a reasonable trier of fact's determination in the plaintiff's favor on the cause of action or defense. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) In doing so we view the evidence in the light most favorable to the party opposing summary judgment. (*Id.* at p. 843; *Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 139.) We accept as true the facts shown by the evidence offered in opposition to summary judgment and the reasonable inferences that can be drawn from them. (*Spitzer v. The Good Guys, Inc.* (2000) 80 Cal.App.4th 1376, 1385-1386.)

## C.      Shapiro Failed to Carry His Burden With Respect to Tracking

Here the declarations of Shultz and Holguin established that BMW's Teleservice was the only BMW Assist service at issue, and it neither could nor did record and transmit Shapiro's location to BMW. The burden thus shifted to Shapiro to raise a triable issue.

Shapiro's only evidence concerning whether BMW tracked his movements was the declaration of Chuboksarov, who made three statements about GPS tracking.

First, Chuboksarov declared that metadata from a donor vehicle's COMbox unit and Car Infotainment Computer (CIC) contained GPS information that was transmitted to BMW servers, even though no such information was available in the vehicle's FASTA data.

13

This evidence fails to establish a triable issue because undisputed evidence showed that Teleservice, the only information capability at issue here, was only part of the software installed on the Car Infotainment Computer, which also controlled a radio, CD/MP3/DVD player, and GPS and SIM cards. Undisputed evidence also showed that BMW Assist provided three other information capabilities, which would be activated only if the vehicle was stolen or involved in a collision or emergency, which never occurred.  The fact that the FASTA data provided by Teleservice contained no GPS coordinates suggests that GPS information, if any, had to come from one of the other three services.

Chuboksarov's declaration at most suggested only that a computer with Teleservice and other software could transmit GPS information to BMW.  That alone has no tendency in reason to prove that the computer actually did so as part of a Teleservice operation, as opposed to some other operation.

Second, Chuboksarov stated that although normally GPS coordinates would be transmitted only after a collision or theft, under a special request with a correct security certificate they could be transmitted in the absence of a collision.

This fails to raise a triable issue because it was undisputed that GPS information could be transmitted in the absence of an accident—when the car was stolen.

Finally, Chuboksarov stated that he wrote a program to imitate a BMW technical request, and with it obtained GPS information transmitted by Teleservice.

Viewing this statement in the light most favorable to Shapiro, and drawing every possible reasonable inference from it,

14

the most it can stand for is that Teleservice had the ability to transmit GPS information.

But neither Chuboksarov nor Shapiro laid any foundation for the statement.

"When the moving party produces a competent expert declaration showing there is no triable issue of fact on an essential element of opposing party's claims, the opposing party's burden is to produce a competent expert declaration to the contrary." (*Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 761-762.) Although a declaration in opposition to summary judgment is liberally construed, "[t]his does not mean the courts may relax the rules of evidence in determining the admissibility of an opposing declaration. Only *admissible evidence* is liberally construed in deciding whether there is a triable issue." (*Id.* at p. 761.) "A party may not raise a *triable* issue of fact at summary judgment by relying on evidence that will not be admissible at trial." (*Perry v. Bakewell Hawthorne, LLC* (2017) 2 Cal.5th 536, 543.)

To be admissible, a competent declaration "must show the declarant's personal knowledge and competency to testify, state facts and not just conclusions, and not include inadmissible hearsay or opinion." (*Bozzi v. Nordstrom, Inc.*, *supra*, 186 Cal.App.4th at p. 761.) "A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates." (Evid. Code, § 720.)

We review a trial court's ruling on the admissibility of expert testimony for an abuse of discretion. (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.) A court abuses its discretion if its ruling is " 'so irrational

15

or arbitrary that no reasonable person could agree with it.' " (*Ibid.*)

No evidence suggested Chuboksarov had the training or experience to write a program that could draw the same Teleservice data from BMW servers that a BMW request would obtain. He identified himself only as a BMW enthusiast who worked as a motorcycle technician. Although he said he spent more than 150 hours on this project, he described no experience, special knowledge or education relating to BMW passenger vehicles or their technology. Nor did Chuboksarov explain how his program worked similar to a BMW data request, reliably pulling the same data, but merely concluded that it did. Additionally, Chuboksarov's declaration about BMW data he drew from BMW's servers was inadmissible hearsay because he provided neither the program he created nor copies of any data it obtained. "[O]ral testimony is not admissible to prove the content of a writing." (Evid. Code, § 1523.)

We conclude the trial court properly excluded Chuboksarov's declaration.

Even if Chuboksarov's declaration—that Teleservice could transmit GPS information—was admissible, this would not constitute evidence that BMW actually tracked and recorded the GPS coordinates of its vehicles, much less that it did so with respect to Shapiro's 2012 BMW.

Summary judgment was therefore proper as to Shapiro's invasion of privacy claims and derivative Penal Code and conspiracy claims.

Shapiro argues the trial court construed Chuboksarov's declaration too strictly when it criticized his representations concerning employment for BMW. Even if true, that criticism

16

formed no part of the substance of the court's ruling and forms none here. As described above, we have given Chuboksarov's declaration the broadest possible construction without regard to his employment status, and conclude his evidence was insufficient even if admissible.

Relying on *Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173 (*Garrett*), Shapiro argues that "[i]n light of the rule of liberal construction, a reasoned explanation required in an expert declaration filed in opposition to a summary judgment motion need not be as detailed or extensive as that required in expert testimony presented in support of a summary judgment motion or at trial." (*Id.* at p. 189.)

In *Garrett*, a case about the defectiveness of a prosthetic device, a metallurgist declared in opposition to summary judgment that after conducting "extensive examinations of . . . the prosthetic device . . . using visual examination, optical microscopic examination, x-ray radiography, fluorescent dye penetrant examination, scanning electron microscopy, and such destructive testing as hardness testing, mirco hardness testing, microstructural analysis, and chemical analysis," he concluded the device was defective. (*Garrett*, *supra*, 214 Cal.App.4th at p. 187.) In reversing the trial court's rejection of this evidence, the appellate court observed that the metallurgist had " 'more than 30 years of experience in materials' analysis, failure analysis and material trade-off evaluation," and was "undoubtedly qualified" to testify about the "hardness of the material[] used in the prosthesis." (*Id.* at p. 190.)

We do not disagree with *Garrett's* holding that an expert's foundational explanation on summary judgment need not be as detailed or extensive as that required at trial. But here

17

Chuboksarov did not inspect the 2012 BMW, gave no explanation about his data request program, and described nothing about the data he collected or the GPS information it contained. Granting that an expert may have some leeway on summary judgment, Chuboksarov's meagre foundational explanation would stretch the rule of *Garrett* beyond all recognition.

At the hearing, Shapiro argued for the first time that the BMW Assist Subscriber Agreement constitutes an admission that BMW Assist can track a car, and BMW will use the location and movement data it collects for research purposes and share it with third parties. But similarly with Chuboksarov's declaration that Teleservice could transmit GPS information, evidence that BMW Assist could collect and transmit GPS information raised no triable issue as to whether Teleservice actually did so.

Shapiro argues that the possibility alone of illegal tracking suffices to avoid summary judgment, because a plaintiff opposing summary judgment need not prove its claim, it need only show a reasonable probability exists that it *can* prove its claim at trial. We disagree. "A triable issue of material fact exists where 'the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.'" (*Neiman v. Leo A. Daly Co.*, *supra*, 210 Cal.App.4th at p. 967.) That BMW Assist generally or Teleservice specifically are capable of illegal tracking is not evidence that would allow a reasonable trier of fact to conclude that actual tracking took place. In other words, the evidence as it stands now would not allow a jury to find that BMW invaded Shapiro's privacy rights. If current evidence points to other evidence that, if obtained and presented, would allow the jury to find for the party opposing judgment, that party

18

must either obtain and present it in opposition to the motion or obtain a continuance on the motion to afford it an opportunity to do so. (See Code of Civ. Proc., § 437c, subd. (h) ["If it appears from the affidavits submitted in opposition to a motion for summary judgment . . . that facts essential to justify opposition may exist but cannot, for reasons stated, be presented," the court may order a continuance "to permit affidavits to be obtained or discovery to be had"].) But summary judgment cannot be avoided on the basis of future evidence.

Shapiro argues the trial court abused its discretion by denying his request for a continuance to conduct more discovery into Chuboksarov's revelations to the extent that Chuboksarov could have supplemented or clarified any topic in his expert declaration, or to the extent that more discovery was needed about the tracking and data retrieval capabilities of the 2011 Campaign. We disagree. "If it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication, or both, that facts essential to justify opposition may exist but cannot, for reasons stated, be presented, the court shall deny the motion, order a continuance to permit affidavits to be obtained or discovery to be had, or make any other order as may be just." (Code Civ. Proc., § 437c, subd. (h).) "Where the opposing party submits an adequate affidavit showing that essential facts may exist but cannot be presented timely, the court must either deny summary judgment or grant a continuance." (*Dee v. Vintage Petroleum, Inc.* (2003) 106 Cal.App.4th 30, 34-35.)

Shapiro submitted no adequate declaration showing that essential facts may exist but could not be timely presented. He complained that Rainer Wargitsch, BMW's person most

19

knowledgeable, refused to answer questions about certain aspects of BMW's ability to activate computer systems embedded in certain BMW series models, and admitted that data underlying Teleservice reports was unavailable. But a lack of evidence that BMW software was transmitting GPS information does nothing to affirmatively suggest the existence of essential facts raising a triable issue. Neither did Shapiro show that the information he sought could not have been timely presented, as he made no motion to compel further responses from Wargitsch or BMW, and no motion to continue the hearing on summary judgment. We conclude the trial court acted well within its discretion to deny a continuance.

## DISPOSITION

The judgment is affirmed. Respondent is awarded its costs on appeal.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.

BENDIX, J.