[No. B217782. Second Dist., Div. Eight. July 13, 2010.]

KATYA BOZZI, Plaintiff and Appellant, v.
NORDSTROM, INC., et al., Defendants and Respondents.

756

**COUNSEL**

Lon B. Isaacson Associates, Lon B. Isaacson and Stephen R. Onstot for Plaintiff and Appellant.

Manning & Marder Kass, Ellrod, Ramirez, Kathleen A. Hunt and Patrick L. Hurley for Defendants and Respondents Nordstrom, Inc., and South Bay Center.

Danner & Chonoles and Stephen J. Chonoles for Defendant and Respondent Kone, Inc.

## OPINION

**GRIMES, J.**—In this personal injury lawsuit, plaintiff Katya Bozzi appeals from the grant of summary judgment in favor of defendants Nordstrom, Inc., South Bay Center, LLC (collectively Nordstrom), and Kone, Inc. (Kone). Bozzi was riding the down escalator to the first floor of a Nordstrom department store when the escalator stopped abruptly due to a power outage that was apparently caused by a nearby traffic accident. We affirm the judgment, finding plaintiff did not show there was a triable issue of fact that defendants breached any duty of care or that the escalator was defective.

### BACKGROUND

On July 14, 2006, plaintiff was shopping at the Nordstrom store at the South Bay Galleria in Redondo Beach. She was riding an escalator from the second floor down to the first after making a purchase. An electrical service interruption in the City of Redondo Beach caused a power outage in the store. The lights went out, and the escalator stopped. Plaintiff was holding onto one or both handrails, but she was injured when her left foot moved down one step on the escalator, though she did not fall. The power was out for about one minute and was then restored. The lights went on, the escalator descended to the first floor, and plaintiff walked out of the store. There were other shoppers riding the escalator with plaintiff, including her adult daughter, but no one else claimed to have been injured.

Plaintiff sued all defendants for negligence. She alleged Nordstrom was a business that invited her to shop and therefore owed a duty not to create an unreasonably dangerous condition in the store. Further, she alleged Nordstrom violated the duty to inspect and maintain the safety of the escalator and to warn of the danger of a jolt in the event of a power outage. She alleged Kone, successor to the escalator manufacturer, also violated the duty to provide a safe escalator or warn of inherent defects. The second cause of action against Nordstrom for premises liability also alleged violation of the duty to take reasonable steps to prevent reasonably foreseeable harm. The third cause of action was against Kone only, for strict product liability. Plaintiff alleged all defendants had a duty to either supply an alternate power supply or design and maintain the escalator so that it would slow to a gradual stop when the power went out.

## THE SUMMARY JUDGMENT MOTIONS

Nordstrom and Kone filed separate motions for summary judgment. They argued the escalator was not defective, and plaintiff was not injured by any negligence in the design, manufacture, installation or maintenance of the escalator. Defendants contended this was one of those accidents for which no one was to blame. (See *Mautino v. Sutter Hospital Assn.* (1931) 211 Cal. 556, 561 [296 P. 76] [" ' "[N]ot every accident that occurs gives rise to a cause of action upon which the party injured may recover damages from someone. Thousands of accidents occur every day for which no one is liable in damages, and often no one is to blame, not even the ones who are injured." ' "].)

The summary judgment motions were supported by substantially identical declarations of Davis L. Turner, who has been employed in the elevator and escalator industry since 1962. Mr. Turner worked for Otis Elevator Company (Otis) from 1962 to 1968. After military service, he returned to Otis in 1972 and worked there until 1988. In his early years at Otis, he held positions in manufacturing and installation of elevators and escalators. He progressed to sales representative, construction superintendent, regional director of field education, product manager for escalators, and various management positions. He left Otis to hold executive positions with Mitsubishi Electronics America until he established his own company in 1996.

Through his company, Mr. Turner provides consulting services for construction projects involving elevators and escalators. He inspects elevators and escalators to advise property owners as to performance, maintenance, repair, safety, and compliance with state codes and industry standards. He is also a forensic expert who has been qualified to testify in eight states, including California, about elevator and escalator design, engineering, manufacture, installation, operation, maintenance, repair and safety. He is a member of various professional organizations involving elevator safety and a member of the American Society of Mechanical Engineers, having chaired committees on escalator and elevator standards and inspection.

Mr. Turner inspected the escalator at the Nordstrom store at South Bay Galleria in September 2008. A Kone service technician started and stopped the escalator several times while Mr. Turner was riding it. Mr. Turner found the escalator traveled at a speed and stopped at a distance that met state requirements and industry standards. In addition to inspecting the escalator, he reviewed extensive records, including plaintiff's deposition, the entire file of inspections of the escalator kept by California's Department of Industrial Relations, Division of Occupational Safety and Health (DOSH), the manufacturing blueprints, Kone's maintenance contract with Nordstrom, Kone's

maintenance technician's guide, and all of Kone's records of examination, maintenance and repair of the escalator from a year before the power outage until a month afterward.

He testified the escalator was installed in the Nordstrom store in 1985. DOSH inspected the escalator before the store opened to the public and found its design, manufacture, installation, and posted warnings met all California code requirements. DOSH determined the escalator functioned properly and was safe for its intended use. The escalator design was state of the art in the escalator industry in 1985. Its design, manufacture, installation, and posted warnings met industry standards. Nordstrom contracted with Kone to maintain the escalator. The maintenance contract was the most comprehensive contract Kone offered. Kone inspected the escalator every month. DOSH inspected the escalator in 2005 and 2007 and found no problem with the way it stopped.

Mr. Turner explained an escalator's brake controls its stopping. An escalator stops the same way whether triggered by an emergency stop or by a power outage. Kone installed a new brake on the escalator six months before the power outage. Mr. Turner stated it was a superbly designed, state-of-the-art brake that met industry standards and was safe for its intended use. The brake was set to bring the escalator to a stop at a rate significantly slower than the maximum speed allowed by the California Code of Regulations.

Kone inspected the escalator less than three weeks before, and one week after, the power outage. In both inspections, the escalator worked properly, with no brake malfunction. When inspected, the escalator did not jolt while stopping. At the time of the power outage, the escalator had come to a complete stop and restarted a few seconds later. Mr. Turner explained that once the escalator stopped, it could not restart on its own. If a safety switch had been triggered by a jolting stop, the escalator could not have been turned back on with the escalator key, and Nordstrom would have had to make a trouble call to Kone. Yet no safety switch was triggered on the date of the power outage, Nordstrom did not make any trouble call to Kone to report a problem with the escalator, and the escalator could only have restarted when a Nordstrom employee used a key to restart it after power was restored.

Mr. Turner explained a backup generator would not have prevented a sudden stop of the escalator, as plaintiff alleged in her complaint. Whether or not there was a backup generator, the escalator would still stop when the electric power was cut off, and it would take several seconds for a backup generator to activate. Neither state code nor industry standards requires the use of a backup generator for escalators. Indeed, when the electricity is cut off, the safest thing is for moving escalators to come to a stop, rather than to

continue transporting passengers in the dark by means of a backup generator. Mr. Turner concluded plaintiff was not injured by any defect in design or manufacture of the escalator, or by any negligence in the design, manufacture, installation or maintenance of the escalator.

In opposition, plaintiff offered the expert declaration of Dr. Josef Maatuk. Dr. Maatuk earned a bachelor's degree in engineering from The Technion, a university in Israel, a master's degree in mechanical engineering from the University of California, Los Angeles (UCLA), and a Ph.D. in mechanical engineering from UCLA. The focus of his postdoctoral studies and thesis was motion control and structural analysis, including motion vibration. After completing his education in 1976, Dr. Maatuk worked as a mechanical engineer in various industries, including aerospace with Rockwell, automotive with Mercedes, and in other "motion-related" fields. He has developed, designed and analyzed projects that require motion control with potential abrupt stops, including elevators and escalators.

Dr. Maatuk never inspected the escalator at the Nordstrom store at the South Bay Galleria. Dr. Maatuk acknowledged DOSH inspected the escalator and issued a permit for its operation in 1985. He testified he could not determine whether the escalator was properly maintained from 1985 through July 2005, a year before the power outage. He noted that DOSH inspected and approved the escalator in 2005 and 2007 but did not inspect it in 2006, the year of the power outage.

Dr. Maatuk testified it was impossible to determine the travel speed or stopping distance of the escalator on the day of the power outage, and it was impossible to determine what design or manufacturing defect caused the escalator to stop abruptly. Despite the impossibility of knowing what defect in manufacture or deficiency in maintenance there may have been, and the impossibility of knowing what happened on the day of the power outage, Dr. Maatuk opined that "certain technology that was available in 1985 would have prevented the abrupt stop that caused the injuries claimed by the [p]laintiff in this case." (Italics omitted.) He concluded plaintiff's testimony that the escalator came to a jolting stop proves there was a defect, because a properly designed and maintained escalator should not stop abruptly.

## DISCUSSION

### A. *Standard of review*

Our Supreme Court has said that the purpose of the 1992 and 1993 amendments to the summary judgment statute was "to liberalize the granting of motions for summary judgment." (*Aguilar v. Atlantic Richfield Co.* (2001)

25 Cal.4th 826, 854 [107 Cal.Rptr.2d 841, 24 P.3d 493].) "It is no longer called a 'disfavored remedy.' It has been described as having a salutary effect, ridding the system, on an expeditious and efficient basis, of cases lacking any merit." (*Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 248 [100 Cal.Rptr.3d 296] (*Nazir*).) On appeal, "we take the facts from the record that was before the trial court . . . . ' "We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained." ' " (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037 [32 Cal.Rptr.3d 436, 116 P.3d 1123], citation omitted.)

B. *Evidence in support of and in opposition to a summary judgment motion must be admissible, just like at trial.*

The same rules of evidence that apply at trial also apply to the declarations submitted in support of and in opposition to motions for summary judgment. Declarations must show the declarant's personal knowledge and competency to testify, state facts and not just conclusions, and not include inadmissible hearsay or opinion. (Code Civ. Proc., § 437c, subd. (d); *DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666 [69 Cal.Rptr.3d 888] (*DiCola*) [affirming summary judgment where trial court properly sustained hearsay objections].) The declarations in support of a motion for summary judgment should be strictly construed, while the opposing declarations should be liberally construed. (*Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) This does not mean that courts may relax the rules of evidence in determining the admissibility of an opposing declaration. Only *admissible evidence* is liberally construed in deciding whether there is a triable issue.

C. *An expert's declaration must provide a foundation establishing expertise in an area beyond a layperson's knowledge and facts on which the expert opinion is based.*

■ An expert declaration is admissible to support or defeat summary judgment if the expert's testimony would be admissible at trial in accordance with Evidence Code section 720. An expert may testify to an opinion on a subject "that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." (Evid. Code, § 801, subd. (a).) No party here denies that expert opinions were required to prove or disprove breach of duty or strict liability in this case.

When the moving party produces a competent expert declaration showing there is no triable issue of fact on an essential element of the opposing party's claims, the opposing party's burden is to produce a competent expert

declaration to the contrary. (*Bushling v. Fremont Medical Center* (2004) 117 Cal.App.4th 493, 510 [11 Cal.Rptr.3d 653] [plaintiff's experts in medical malpractice case did not create material dispute by stating it was " 'more probabl[e] than not' " that plaintiff's injury resulted from trauma during surgery without explanation or facts other than assumed facts for which no evidence was presented]; *Golden Eagle Refinery Co. v. Associated Internat. Ins. Co.* (2001) 85 Cal.App.4th 1300, 1315 [102 Cal.Rptr.2d 834], disapproved on other grounds in *State of California v. Allstate Ins. Co.* (2009) 45 Cal.4th 1008, 1036 [90 Cal.Rptr.3d 1, 201 P.3d 1147] [expert declaration stating toxic spill was "sudden and accidental" was inadmissible to prove that fact because it was devoid of any basis, explanation, or reasoning]; *Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1485, 1487 [72 Cal.Rptr.2d 232] [declaration of treating doctor, who "felt" exposure to methane gas leak " 'probably aggravated [plaintiff's] respiratory problems' " because he did " 'not know of any more medically probable cause,' " was equivocal, speculative, and lacked sufficient foundation to create triable issue of fact].)

All defendants objected to the declaration of Dr. Maatuk. The trial court overruled defendants' objections that Dr. Maatuk was unqualified to offer an expert opinion. But the trial court sustained defendants' objections that Dr. Maatuk's opinions lacked any factual foundation and were conclusory and speculative. We review the trial court's rulings on evidentiary objections for an abuse of discretion. (*DiCola, supra,* 158 Cal.App.4th at p. 679.)

The trial court did not abuse its discretion in ruling the opinion of Dr. Maatuk lacked foundation. The trial court properly found Dr. Maatuk was qualified to offer an opinion, yet he stated no facts to support his opinions, and his opinions were conclusory and speculative. Dr. Maatuk had never seen, ridden or inspected the escalator. He could not determine whether the escalator was properly maintained between the time it was installed in February 1985 until July 2005.[1] He acknowledged that DOSH inspected and approved the escalator in 2005 and 2007. He found it "impossible to determine" what design or manufacturer's defect caused the escalator to stop abruptly in 2006. Dr. Maatuk relied on nothing more than syllogistic reasoning to conclude that if an escalator stops abruptly, it must have been defectively designed or maintained.

■ We agree with the trial court that Dr. Maatuk's opinion was insufficient to create a material dispute, because he did not state any facts to support

---

[1] Plaintiff does not contest the trial court's ruling sustaining defendants' objections to Dr. Maatuk's opinions that "[i]t is just as likely as not that the [e]scalator was not properly maintained" between February 1985 and July 2005, and "escalator-maintenance inspections and the records maintained therewith are often incomplete and inaccurate. It can be difficult or impossible to retroactively determine the actual condition of an escalator on any given date."

his opinion. An opinion is only as good as the facts and reasons on which it is based. (*Kelley v. Trunk* (1998) 66 Cal.App.4th 519, 523 [78 Cal.Rptr.2d 122]; *Pacific Gas & Electric Co. v. Zuckerman* (1987) 189 Cal.App.3d 1113, 1135 [234 Cal.Rptr. 630] ["The value of opinion evidence rests not in the conclusion reached but in the factors considered and the reasoning employed."].) ■ In light of defendants' evidence demonstrating the escalator was state of the art when manufactured, had the most comprehensive maintenance available, was inspected on average every 24 days, had a new, superbly designed state-of-the-art escalator brake that had never failed to operate properly, and had posted warnings that met industry standards and all state code requirements, Dr. Maatuk's conclusory opinion failed to create a triable issue.

He offered no explanation why DOSH continued to approve the escalator in Nordstrom year after year even though it did not gradually slow in an emergency stop. He did not respond to Mr. Turner's testimony that the brake was state of the art, that no safety switch was triggered on the date of the power outage, that neither Kone nor Mr. Turner could duplicate a jolting stop when they inspected the escalator, that the posted warnings met industry standards and complied with state code requirements, and that a backup generator would not prevent an abrupt stop but created the risk of other dangers. Dr. Maatuk's testimony that technology was available that would have prevented an abrupt stop does not create a material dispute that any escalator without such technology is defective and any business operating an escalator without such technology is negligent. (Cf. *Nardizzi v. Harbor Chrysler Plymouth Sales, Inc.* (2006) 136 Cal.App.4th 1409, 1415 [39 Cal.Rptr.3d 530].)

■ The only thing Dr. Maatuk had to say in response to Mr. Turner's testimony that the escalator was set to stop even more slowly than code requirements was that he found it "impossible to determine from the records the traveling speed and/or the stopping distance of the escalator" on the day of the power outage. Yet he opined, again without facts to demonstrate the truth of his opinion, that plaintiff's claim the escalator suddenly jolted to a stop "is not impossible nor necessarily improbable." The trial court properly excluded as speculative and without foundation Dr. Maatuk's ultimate conclusion that the escalator's failure to slowly come to rest in a power outage "indicates a faulty design, faulty maintenance, and/or the confluence of both factors." "An expert's speculations do not rise to the status of contradictory evidence, and a court is not bound by expert opinion that is speculative or conjectural. . . . [Parties] cannot manufacture a triable issue of fact through use of an expert opinion with self-serving conclusions devoid of any basis,

explanation, or reasoning." (*McGonnell v. Kaiser Gypsum Co.* (2002) 98 Cal.App.4th 1098, 1106 [120 Cal.Rptr.2d 23], citations omitted.)[2]

### D. *Where there is no triable issue of material fact, summary judgment is a favored remedy.*

Having found the trial court did not abuse its discretion in sustaining the objections to Dr. Maatuk's declaration, we will consider only the admissible evidence in exercising de novo review of the trial court's ruling. (*State Dept. of Health Services v. Superior Court* (2003) 31 Cal.4th 1026, 1035 [6 Cal.Rptr.3d 441, 79 P.3d 556].) We find defendants provided competent expert testimony from Mr. Turner, an experienced engineer who worked with elevators and escalators for 46 years. Mr. Turner offered a detailed explanation of the factual basis and reasons for his opinion the escalator was not negligently designed, manufactured or maintained, the escalator was not defective, and the posted warning was adequate. Nordstrom hired Kone, successor to the company that designed, manufactured and installed the escalator, to regularly inspect and maintain it according to the standards of the most comprehensive contract Kone offered. The State of California found the escalator always to be safe for public use, it had a new, state-of-the-art brake, and its running and stopping speeds met or exceeded all state regulations. During the many inspections by DOSH and Kone, the escalator never jolted to a stop, so there was nothing Nordstrom or Kone could do to remedy a problem they could not duplicate or diagnose.

Plaintiff argued in opposition to Nordstrom's summary judgment motion that Nordstrom's escalator was a common carrier, and Nordstrom had a heightened duty to "use the utmost care and diligence" and to do "everything necessary" to keep plaintiff safe on the escalator ride.[3] (*Vandagriff v. J. C. Penney Co.* (1964) 228 Cal.App.2d 579, 582 [39 Cal.Rptr. 671] ["[a]n escalator in a department store is a common carrier"].) Yet plaintiff offered no admissible evidence that any defendant could have done anything more to avoid a sudden stop in a power outage. The undisputed facts establish that Nordstrom acted not only with due care but with the utmost care required of a common carrier.

---

[2] The only other declaration plaintiff offered in opposition to the summary judgment motions was her own, in which she described events essentially as she had in her deposition. The trial court sustained the objection on the ground of speculation to her statement, "Had signs been posted, I would have realized what might happen if the escalator needed to stop. I would then have known to hold tightly to both handrails and to pay special attention to my footing." Plaintiff does not contest the trial court's ruling sustaining the objection to this statement.

[3] Plaintiff also argued in opposition to the summary judgment motions that all defendants were liable on a theory of res ipsa loquitur. Plaintiff did not discuss res ipsa loquitur in her briefs on appeal and confirmed at oral argument she has abandoned that theory.

Defendants complied with all the procedural and substantive rules of law in moving for summary judgment. The grant of summary judgment in this case properly rid the system on an expeditious and efficient basis of a case lacking any merit. (See *Nazir, supra*, 178 Cal.App.4th 243, 248.)

E. *A party cannot defeat summary judgment with late-filed papers unless the court permits the late papers in the interests of justice.*

On the day of the hearing on defendants' motions for summary judgment, plaintiff filed what she called a "surrebuttal" brief and supplemental declaration of Dr. Maatuk. Plaintiff never made a request to continue the hearing pursuant to Code of Civil Procedure section 437c, subdivision (h), on the ground that she could not have presented the supplemental declaration with her opposition brief. She never sought leave of court to file the "surrebuttal" brief or supplemental declaration. She acknowledges on appeal section 437c does not authorize "surrebuttal" briefs or evidence, but argues the trial court should have exercised its discretion to consider the late papers, without offering any justification for her late submission.

We review the trial court's refusal to consider plaintiff's "surrebuttal" brief for an abuse of discretion. A trial court has broad discretion under rule 3.1300(d) of the California Rules of Court to refuse to consider papers served and filed beyond the deadline without a prior court order finding good cause for late submission. (*Hobson v. Raychem Corp.* (1999) 73 Cal.App.4th 614, 623 [86 Cal.Rptr.2d 497], disapproved on other grounds in *Colmenares v. Braemar Country Club, Inc.* (2003) 29 Cal.4th 1019, 1031, fn. 6 [130 Cal.Rptr.2d 662, 63 P.3d 220]; accord, *Lerma v. County of Orange* (2004) 120 Cal.App.4th 709, 715–716 [15 Cal.Rptr.3d 609] [trial court has broad discretion to refuse to continue hearing where affidavit did not establish Code Civ. Proc., § 437c, subd. (h) conditions].)

We cannot find any reason to conclude the trial court abused its discretion. Defendants followed all the rules and were entitled to expect the trial court to enforce them. Plaintiff did not invoke any of the available procedures to obtain a court order permitting her to file late papers. In any event, the "surrebuttal" brief and supplemental declaration primarily urged the competency of Dr. Maatuk to testify about escalators, which the trial court had already found in plaintiff's favor in its tentative ruling. The only other new statement in the supplemental declaration was that if an escalator stops gradually rather than suddenly in a power outage, the forward acceleration will be less likely to push forward the people riding it. We question whether that observation is beyond a layperson's knowledge, but in any event, it did not show a material dispute as to whether defendants breached their duty of care or manufactured a defective product. The trial court properly refused to

consider plaintiff's late-filed papers, and in this case, the outcome would not have been different even if plaintiff had obtained leave of court to file them.

## DISPOSITION

We affirm the judgment below. Respondents are to recover their costs on appeal.

Rubin, Acting P. J., and Flier, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 29, 2010, S185708.