Filed 1/28/26  Chu v. 2000 West Street CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ANTHONY K. CHU et al.,<br><br>        Plaintiffs and Appellants,<br><br>        v.<br><br>2000 WEST STREET LLC et al.,<br><br>        Defendants and Respondents. | B342313<br><br>(Los Angeles County<br>   Super. Ct. No. 22AHCV00135) |

APPEAL from an order of the Superior Court of Los Angeles County, William A. Crowfoot, Judge.  Affirmed.

Schiffer and Eric M. Schiffer; Law Offices of Anthony K. Chu and Anthony K. Chu, for Plaintiffs and Appellants.

Frost Brown Todd, S. Christopher Yoo and Jacob M. Clark, for Defendants and Respondents.

Appellants Anthony Chu, d.b.a. Law Offices of Anthony K. Chu (Chu) and Jiang Qi brought an action against respondents 2000 West Street LLC (2000 West), Yun Zheng, and Shaojie Zhang. Appellants asserted claims for fraudulent transfer and civil conspiracy, alleging that respondents transferred assets through a series of transactions with the intent of avoiding two large judgments owed to appellants from prior lawsuits.

The trial court granted respondents' motion for summary judgment, finding that appellants failed to show a triable issue of fact as to a fraudulent intent. Appellants assert that the trial court erred in excluding several key pieces of evidence, which, if admitted, would have demonstrated triable issues of fact. We find no error and therefore affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

I.    *Background*

2000 West was formed in March 2017 for the purpose of purchasing a commercial warehouse in Reading, Ohio. The three original owners of the company were Yun Zheng (30 percent), Jennifer Liu (20 percent), and Qingyu Zhang[1] (50 percent). Zheng is also the manager of 2000 West. Zheng and her husband, Shaojie Zhang, are respondents in this case.

Appellants' claims arise out of judgments they obtained in two prior lawsuits in Los Angeles Superior Court. In June 2016, Chu, an attorney, filed an employment lawsuit on behalf of Qi. Qi sued a number of defendants, including New Diamond Trucking, Inc., a company owned by Qingyu. Following a bench trial, the court entered judgment on October 2, 2019 against New Diamond and others in an amount, according to appellants, totaling $426,513.24

In July 2020, Chu filed a malicious prosecution action on his own behalf against multiple defendants, including Qingyu. Chu obtained a default judgment against Qingyu for $500,534 in April 2021.

II.    *The Complaint*

Appellants filed this action on March 14, 2022 against respondents and others, including New Diamond, Liu, and Qingyu. In the operative third amended complaint, appellants asserted claims for fraudulent transfer and

---

[1]    Because they share a surname, we refer to Qingyu Zhang and respondent  Shaojie Zhang by first name for clarity.

civil conspiracy.[2]  In the first through third causes of action against 2000 West for fraudulent transfer, constructive fraud, and conspiracy, respectively, appellants allege that New Diamond, owned by Qingyu, transferred funds to 2000 West under the guise of obtaining a 50 percent ownership share of the company. However, appellants contend New Diamond did so to avoid payment of the judgment in the employment action.  The fourth through sixth causes of action allege fraudulent transfer, constructive fraud, and conspiracy, respectively, against Zheng and Shaojie. Appellants allege that Zheng (as one of the owners of 2000 West) and Shaojie (as Zheng's spouse), conspired with Qingyu to transfer Qingyu's interest in 2000 West to Zheng to avoid paying the default judgment in the malicious prosecution action.

III.    *Summary Judgment*

    A.    *Motion*

Respondents filed a motion for summary judgment or adjudication in April 2024.  They presented evidence of a complicated series of transactions between various parties related to 2000 West's purchase of a warehouse in Ohio. Respondents claim that in April 2017, Zheng and New Diamond agreed that Zheng would provide $362,500 to New Diamond to help finance the warehouse purchase by 2000 West. Respondents provided a copy of Zheng's check to New Diamond, dated April 3, 2017.  They also submitted a Funding Agreement, purporting to memorialize the arrangement, dated in April 2017 and signed by Yun Zheng on her own behalf and Qingyu's son on behalf of New Diamond.  The Funding Agreement further provided that once the purchase price was settled, New Diamond would use the money Zheng had provided to pay Zheng's 30 percent capital contribution to 2000 West, on behalf of Zheng.  The balance of the money Zheng had given to New Diamond would serve as a personal loan to Qingyu.

In October 2017, 2000 West entered into a lease agreement for the warehouse property, which it then subleased to New Diamond.  The purchase price for the property was $950,000. 2000 West paid the $350,000 purchase deposit in October 2017, made up of all of Liu's capital contribution of

---

[2]    The record on appeal does not include a copy of the complaint or any amended complaint. We take our summary from the trial court's summary judgment order.

$190,000 (20 percent of $950,000) and $160,000 from Zheng's capital contribution, paid from the $362,500 in funds "being held by New Diamond on behalf of" Zheng. Qingyu did not provide his 50 percent capital contribution up front. Instead, 2000 West and Qingyu entered into a promissory note under which Qingyu would pay the monthly rent payments on the property (about $16,000) to satisfy his capital contribution amount.

After New Diamond paid 2000 West the $160,000 from Zheng for the down payment, New Diamond still held the balance of Zheng's capital contribution that was earmarked for 2000 West ($285,000 total capital contribution - $160,000 paid = $125,000 remaining held by New Diamond for Zheng). 2000 West agreed to advance Zheng's $125,000 back to New Diamond as a short-term loan. This agreement was purportedly reflected in a short-term advance agreement dated October 5, 2017. New Diamond paid eight checks to 2000 West between October 2017 and April 2018, in satisfaction of the short-term advance agreement. New Diamond then continued to make monthly rent payments and pay monthly installments toward Qingyu's capital contribution between May 2018 and March 1, 2019. After that, New Diamond made no further payments.

Zheng also stated that she advanced other money to Qingyu in 2018 as part of other potential investments, giving him one check for approximately $253,000 and one for approximately $169,000. They entered into an agreement in January 2019 for repayment of the $500,000 Qingyu owed to Zheng, with Qingyu's ownership interest in 2000 West as collateral. When Qingyu did not make the payments, they entered into Amendment No. 1 to the LLC agreement, dated October 1, 2019, transferring ownership of Qingyu's 50 percent interest in 2000 West to Zheng. In September 2020, Liu executed this amendment and also assigned her interest to Zheng, giving Zheng full ownership of 2000 West. Zheng and Shaojie both submitted declarations stating that from 2017 through 2020, they were not aware of the judgments against New Diamond and Qingyu in the prior lawsuits and that none of the transactions were undertaken to assist in evading any creditors.

In December 2021, Qingyu filed a lawsuit in Ohio state court against Zheng and 2000 West. Qingyu alleged he was fraudulently induced to give

up his ownership interest in 2000 West to Zheng. In March 2024, the Ohio court granted summary judgment in favor of Zheng and 2000 West.

In their moving papers, respondents argued that the claims for fraudulent transfer failed because they had presented evidence that the transfers from New Diamond to 2000 West and from Qingyu to Zheng were legitimate business transactions. As for the claims for civil conspiracy (third and sixth), they argued that they failed because they were premised on the same allegations of fraudulent transfer.

B.    *Opposition*

Appellants opposed the motion for summary judgment on August 27, 2024. In his declaration, Chu stated that appellants had not been able to collect any of the judgments against New Diamond and Qingyu.

Appellants included as an exhibit a transcript of the deposition of Qingyu in the Ohio action, taken by Zheng and 2000 West in January 2024. They also included the deposition exhibits. Appellants also attached copies of other documents from the Ohio action, including Zheng's motion for summary judgment, exhibits to the motion, and the order granting that motion.

Appellants also included several exhibits to Chu's declaration purporting to be monthly bank statements for 2000 West and New Diamond. Chu declared that he had received these records from Bank of America pursuant to subpoena. He did not include copies of the subpoenas or any declaration from a custodian of records.

In addition, appellants pointed to four agreements between Zheng and Qingyu: the funding agreement (dated April 4, 2017), promissory note (dated October 1, 2017), and two agreements to repay the loan (dated January 1, 2019). Appellants noted that in discovery responses, Zheng admitted she had created all of these documents in October 2019, despite their dated signatures suggesting otherwise. Appellants argued that this established that Zheng had backdated the documents and they did not support her claim that she had legitimately loaned money to Qingyu. As further evidence, appellants pointed to the amendment 1 to the LLC agreement, transferring Qingyu's ownership share in 2000 West to Zheng, which was purportedly signed and dated in October 2019. However, in Chu's declaration, he stated

5

that Liu "will testify" that the amendment was presented to her in August 2020 and notarized August 20, 2020.

Appellants argued that they had raised material issues of fact as to respondents' intent to defraud appellants. They argued that they had produced evidence showing that the money from New Diamond to 2000 West was paid to move assets out of New Diamond to avoid creditors. They also argued that Zheng and Shaojie were insiders and "shareholders" of New Diamond based on the money Zheng had loaned the company, and that the transfer of Qingyu's interest in 2000 West was made without consideration and therefore fraudulent.

On September 4, 2024, appellants filed a belated declaration by Liu in support of their opposition. The declaration was dated and signed by Liu on September 1, 2024.

C. *Reply and Sur-reply*

In reply, respondents noted that appellants did not take any depositions of any defendants in this lawsuit. They also argued that the documents appellants relied on from the Ohio action involved allegations by Qingyu that he was defrauded by Zheng and 2000 West, which was "the opposite of collusion." They argued that there was no admissible evidence that Zheng and Shaojie were owners or shareholders of New Diamond and that regardless of any "backdated" documents, there was no evidence disputing that the documents reflected agreements between the parties.

Respondents also filed lengthy objections to appellants' evidence. As relevant here, they objected that appellants failed to properly submit separate objections, instead including them in their response to the separate statement. They also objected to the Liu declaration as untimely, noting it was served one day before their reply was due. In addition, respondents objected that the transcript of Qingyu's deposition from the Ohio action was inadmissible, and that the bank records provided by appellants were inadmissible hearsay and lacked foundation.

Appellants filed a sur-reply on September 6, 2024, purporting to respond to new arguments in the reply. They asserted that the Ohio deposition transcript was admissible as an exception to hearsay and that Qingyu was unavailable as a witness because he had moved to Ohio in 2022.

6

In the accompanying declaration, Chu stated that he "already provided" respondents with a copy of the subpoenas and declaration of custodian of records for the bank records. Regarding the late filing of Liu's declaration, Chu stated that he "did not get an opportunity, for personal reasons, to finalize her declaration until August 30, 2024."

D.    *Ruling*

The court held a hearing on the motion on September 10, 2024. Appellants and their counsel did not appear. The court provided a tentative ruling granting the motion. Respondents submitted on the tentative, which the court adopted as the final order.

In its written order, the court sustained in part respondents' objections to the Ohio deposition transcript. The court found that while attorneys for 2000 West and Zheng were present at the deposition, including the current counsel of record for respondents (serving as Zheng's counsel in Ohio), Shaojie "was not a party to [the Ohio] lawsuit and therefore did not receive notice of the deposition or have an opportunity to cross-examine" Qingyu. In addition, the court found that "there is no evidence that [Qingyu's] deposition was intended to serve as trial testimony or that the parties subsequently reached any agreement concerning use of his deposition at trial in that case, or in other cases." Citing the factors set forth in *Berroteran v. Superior Court* (2022) 12 Cal.5th 867, 876 (*Berroteran*), the court found that the "fact that the parties were adverse is not, standing alone, sufficient to demonstrate an interest and motive to cross-examine."

The court also sustained respondents' objections to the bank records, as lacking a certificate of authentication from a custodian of records. Noting appellants' "impermissible sur-reply," the court found that the "issue is not whether [respondents] have been given the records; the issue is that [appellants] have yet to demonstrate the admissibility of the purportedly subpoenaed records to the Court." The court overruled respondents' objections to other records from the Ohio action, taking judicial notice of the existence of the records, but not their truth.

The court also sustained respondents' objection to the Liu declaration as untimely. The court found that appellants served the declaration "only 6 days before the hearing in violation of CCP section 437c(b)(2). Plaintiffs do

not offer any explanation for the failure to timely serve the declaration. In their impermissible sur-reply, Plaintiffs claim that 'for personal reasons', the declaration could not be finalized until August 30, 2024." The court found this explanation was "inadequate" and "belied by the [f]act that the declaration is actually dated September 1, 2024."

Turning to the merits, the court concluded that respondents met their burden to show that appellants "cannot establish their claims for fraudulent transfer or civil conspiracy. [Respondents] made a prima facie showing that they acted in good faith and the transfers from [Qingyu] and New Diamond were made for a 'reasonably equivalent value' based on [Qingyu's] obligations to [Zheng] and 2000 West." The court found that the Ohio lawsuit "shows that there was no collusion or conspiracy to transfer assets to avoid [appellants'] attempts to collect on a judgment," and found respondents' arguments persuasive that even if the agreements were backdated, "there is no evidence that they do not accurately memorialize the purpose of those documents or the financial arrangements that were made." Accordingly, the court concluded that appellants failed to raise a triable issue of fact as to their fraudulent transfer claims and the civil conspiracy claims. The court thus granted summary judgment in favor of respondents.

The court entered judgment in favor of respondents on October 31, 2024. Appellants timely appealed.

## DISCUSSION

I.    *Legal Standards*

A defendant moving for summary judgment must show "that one or more elements of the cause of action . . . cannot be established." (Code Civ. Proc., § 437c, subd. (p)(2).)[3] The moving defendant "'bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact'"; if the defendant carries this burden of production, it "'causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact.'" (*LAOSD Asbestos Cases* (2023) 87 Cal.App.5th 939, 945, quoting *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850

---

[3]    All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

(*Aguilar*).)  The opposing party must make that showing with admissible evidence. (§ 437c, subd. (c); *Bozzi v. Nordstrom, Inc*. (2010) 186 Cal.App.4th 755, 761 (*Bozzi*) ["Only admissible evidence is liberally construed in deciding whether there is a triable issue."].)

      "On appeal from a summary judgment, we review the record de novo to determine whether triable issues of material fact exist." (*Carver v. Volkswagen Group of America, Inc*. (2024) 107 Cal.App.5th 864, 877.)  In this appeal, appellants challenge only the trial court's rulings on respondents' evidentiary objections.  We reject appellants' argument that the standard for reviewing evidentiary objections on summary judgment is de novo, "consistent with the general standard of review applicable to summary judgment rulings." (*Reid v. Google, Inc*. (2010) 50 Cal.4th 512, 535.)  In *Reid*, the Supreme Court applied the de novo standard of review to evidentiary objections on which the trial court had *failed* to rule, reasoning that "because there was no exercise of trial court discretion, the Court of Appeal had no occasion to determine whether the trial court abused it." (*Ibid*.)  That reasoning does not apply here, where appellants challenge the trial court orders sustaining respondents' evidentiary objections.  Moreover, the Supreme Court in *Reid* expressly declined to "decide generally whether a trial court's rulings on evidentiary objections based on papers alone in summary judgment proceedings are reviewed for abuse of discretion or reviewed de novo." (*Ibid*.)

      The "weight of authority since *Reid* supports application of the abuse of discretion standard" for evidentiary rulings on summary judgment. (*Doe v. SoftwareONE Inc*. (2022) 85 Cal.App.5th 98, 103 [collecting cases]; but see *Pipitone v. Williams* (2016) 244 Cal.App.4th 1437, 1451 [applying de novo review to evidentiary rulings "determined on the papers and based on questions of law such as hearsay"].)  "The party challenging an evidentiary ruling bears the burden of establishing the court exceeded the bounds of reason." (*Mackey v. Board of Trustees of California State University* (2019) 31 Cal.App.5th 640, 657 (*Mackey*).)  Nevertheless, evidentiary questions at summary judgment "'are subject to the overarching principle that the proponent's submissions are scrutinized strictly, while the opponent's are

viewed liberally.'" (*Ibid.*, quoting *Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 852.)

II.   *Analysis*

Appellants contend the trial court erred in excluding various pieces of evidence they submitted in opposition to summary judgment.  They argue that the court "appeared to go out of its way to afford great latitudes to the evidence presented by Respondents, while simultaneously excluding or otherwise giving short shrift to the evidence presented in opposition by Appellants."  We find no support for these claims and no error by the trial court.  Apart from the asserted evidentiary errors, appellants do not challenge the order granting summary judgment.

A.   *Ohio Deposition Transcript*

Appellants first contend that the trial court erred in excluding the transcript of Qingyu's deposition from the Ohio action, along with its exhibits. We find no error.

The trial court sustained respondents' objection to the Ohio deposition transcript on two grounds.  First, as set forth in *Wong v. Stillwater Ins. Co.* (2023) 92 Cal.App.5th 1297, 1324 (*Wong*), the unsigned, out-of-state deposition does not qualify as admissible under California law. Section 437c, subdivision (b)(2) provides that a party may use "affidavits, declarations, [and] depositions" to oppose a motion for summary judgment. Section 2004 defines a "deposition" as a "written declaration, under oath, made upon notice to the adverse party, for the purpose of enabling him to attend and cross-examine."  In *Wong*, the court concluded that the transcript of a Colorado deposition in another case was not admissible for purposes of summary judgment because the deposition was taken without adequate notice to the parties involved in the motion for summary judgment.  (*Wong, supra*, 92 Cal.App.5th at p. 1324.)  The trial court here relied on that analysis and concluded that the Ohio transcript was inadmissible against Shaojie because he had not been a party to the Ohio action and thus did not have proper notice or representation.  (See also § 2025.620 ["[a]t the trial or any other hearing in the action, any part or all of a deposition may be used against any party who was present or represented at the taking of the deposition, or who had due notice of the deposition"].)  We agree.

Appellants argue that the Ohio deposition transcript can be treated as a declaration for summary judgment purposes, citing two cases that involve use of sworn testimony in another *California* action and conclude that such testimony was admissible as the equivalent of a declaration. In *Williams v. Saga Enterprises, Inc.* (1990) 225 Cal.App.3d 142, 149, the court admitted excerpts of a reporter's transcript from a criminal trial, finding that "[w]hile the reporter's transcript is from another case, the effect of the examination made of [the witness] is the same as would be a declaration supplied by him in this case." In *Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 942 (*Sweetwater*),the Supreme Court cited *Williams* and admitted sworn grand jury testimony as the equivalent of a declaration for an anti-SLAPP motion because "the important aspect of such evidence is that it be made under penalty of California's perjury laws." (*Sweetwater, supra*, 6 Cal.5th at p. 943.)

Here, unlike *Sweetwater* and *Williams*, Qinyu's testimony was taken out of state and was not made under oath under California law. Declarations made under oath require the written certification that the statements are made "under penalty of perjury under the laws of the State of California that the foregoing is true and correct." (§ 2015.5.) "[C]ourts have made clear that a declaration is defective under section 2015.5 absent an express facial link to California or its perjury laws." (*Sweetwater Union High School Dist., supra, v. Gilbane Building Co., supra,* 6 Cal.5th at p. 942.) Here, the deposition transcript was not signed by Qingyu, the deponent, and was not made under oath under California law. As such, it cannot be treated as an admissible declaration for the purposes of section 437c.

We also find no error in the trial court's second ground for excluding the deposition transcript—the transcript was not admissible under the hearsay exception for former testimony of an unavailable witness. (Evid. Code, § 1291, subd. (a)(2).) That exception applies where "the declarant is unavailable as a witness" and the party against whom the testimony is offered "had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which" the objecting party would have in the present trial. (*Ibid*.; see *Berroteran v. Superior Court, supra,* 12 Cal.5th at p. 876.)

11

Our Supreme Court examined the application of this statute to deposition testimony in *Berroteran*. Noting the different functions of trial and deposition testimony, the court found that "the 'interest and motive' of the party opponent in cross-examination at a discovery deposition is generally not, as required by [Evidence Code] section 1291(a)(2), similar to that prevailing at trial." (*Berroteran, supra*, 12 Cal.5th at p. 892.) As such, the court articulated a "general rule against admission at trial, by way of that statute's hearsay exception, of prior testimony from a typical discovery deposition," but allowed for the party seeking admission of the testimony to produce "persuasive evidence that the deposition testimony sought to be admitted satisfies the requirements of [Evidence Code] section 1291(a)(2)." (*Id*. at p. 894; see also *id*. at p. 877 [the party proposing the evidence "bears the burden of establishing the requirements for admission"].)

In determining whether the deposition testimony should be excluded, the court should "conduct a factually intensive inquiry," including "whether the parties intended, at the outset, that the deposition serve as trial testimony"; and "whether the parties subsequently reached agreement concerning use of the deposition at trial in that case, or in other cases." (*Berroteran, supra*, 12 Cal.5th at pp. 900-901.) The court noted that in circumstances "in which it is not evident that the parties understood that a deposition was intended for purposes other than discovery, the resulting testimony is . . . generally not made admissible by [Evidence Code] section 1291(a)(2)." (*Id*. at p. 901.) However, the court detailed the following additional factors to consider: (1.) "The timing of the deposition within the context of the litigation, and special circumstances creating an incentive for cross-examination"; (2.) "The relationship of the deponent and the opposing party," such as whether they are close or aligned; (3.) The anticipated availability of the deponent at trial in the proceeding in which the deposition was taken"; (4.) "Conduct at, and surrounding, the deposition — and the degree of any examination conducted by the opposing party"; (5.) The particular designated testimony; and (6.) "Similarity of position" between the lawsuits. (*Id*. at pp. 901-903.) Finally, the court cautioned that "'[t]he determination of similarity of interest and motive in cross-examination should be based on practical considerations' — such as those listed above —

12

'and not merely on the similarity of the party's position in the two cases.'" (*Id*. at pp. 903-904, citing Com., ¶ 4.)

Appellants have not met their burden to establish a basis to depart from the general rule and admit the Ohio transcript under this framework. They made no showing that the parties intended Qingyu's Ohio deposition to be used for any purpose other than discovery in the Ohio action, or that he would be unavailable for trial in that case. Moreover, as previously discussed, Shaojie was not a party to the Ohio action and thus had no opportunity to cross-examine Qingyu during the deposition. We also are not persuaded that the other two defendants—2000 West and Zheng—had a similarity of interest and motive in deposing Qingyu in Ohio as they would have at trial here. Appellants highlight the fact that both lawsuits involved some of the same purported agreements. But the Ohio action involved Qingyu's claim that 2000 West and Zheng fraudulently induced him to transfer his interest in 2000 West to Zheng and that the amendment to the LLC agreement was invalid. In the instant action, appellants claim that Qingyu and respondents conspired together to transfer assets away from Qingyu and New Diamond to avoid paying judgments owed to appellants. The difference in claims and in alignment of the parties supports the trial court's determination that the Ohio deposition transcript was inadmissible hearsay in this action.

B. *Bank Records*

Appellants also assert that the trial court unfairly excluded bank records and checks they offered into evidence, while admitting similar records submitted by respondents. In their opposition to summary judgment, appellants presented multiple exhibits purporting to be bank records. In his declaration, Chu stated that the records were obtained from banks pursuant to subpoenas. However, appellants have not established any basis for their claim that the bank records they presented were admissible. Specifically, the records did not include any authentication from a custodian of records, as required to admit documents under the business records exception to the hearsay rule set forth in Evidence Code section 1271. Indeed, appellants do not argue that the records were properly authenticated as business records, or were admissible under any other hearsay exception. "The same rules of

evidence that apply at trial also apply to the declarations submitted in support of and in opposition to motions for summary judgment. Declarations must show the declarant's personal knowledge and competency to testify, state facts and not just conclusions, and not include inadmissible hearsay or opinion." (*Mackey, supra,* 31 Cal.App.5th 640, 657, quoting *Bozzi, supra,* 186 Cal.App.4th at p. 761; see also § 437c, subd. (d).) "'A party may not raise a triable issue of fact at summary judgment by relying on evidence that will not be admissible at trial.'" (*Forest Lawn Memorial-Park Assn. v. Superior Court* (2021) 70 Cal.App.5th 1, 8.) Appellants failed to establish the necessary foundation to admit these purported bank documents and therefore cannot show that the trial court erred in excluding them.

Additionally, appellants complain that the trial court should have treated checks presented as evidence by respondents in the same fashion. This argument fails for several reasons. First, appellants have not identified any specific item of evidence they claim the court improperly admitted, nor have they articulated the legal basis for such a claim. An appellant must provide an argument and legal authority to support his contentions. "Issues do not have a life of their own: If they are not raised or supported by argument or citation to authority, [they are] . . . waived." (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852, quoting *Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99; *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106 ["An appellate court is not required to examine undeveloped claims, nor to make arguments for parties."].)

Second, appellants did not object to this evidence below. They did not file separate evidentiary objections to respondents' evidence, as required by California Rules of Court, rule 3.1354(b). Further, to the extent they sufficiently asserted objections in their separate statement, they did not raise any objections to the checks submitted by respondents. Any such objection is therefore forfeited. (*Reid, supra*, 50 Cal.4th at pp. 531-532 [holding that objections to summary judgment evidence not made in the trial court are waived]; see also § 437c, subds. (b)(5) and (d).)

Third, the checks relied upon by respondents were not produced from a third party pursuant to subpoena, but personally authenticated by Zheng as received by 2000 West from New Diamond. As such, the evidence produced

by the parties was not similarly situated from an admissibility standpoint simply because both parties proffered checks.  Appellants' contention that the court was required to treat them in the same manner is baseless. [4]

### C.  *Untimely Liu Declaration*

Lastly, appellants contend the trial court abused its discretion in excluding the Liu declaration as untimely.  We find no error in the exclusion of this late-filed declaration.

At all times relevant to this summary judgment motion, section 437c, subdivision (b)(2) required opposition papers to be filed and served 14 days before the hearing, unless the court ordered otherwise for good cause.  "A trial court has broad discretion under rule 3.1300(d) of the California Rules of Court to refuse to consider papers served and filed beyond the deadline without a prior court order finding good cause for late submission."  (*Bozzi, supra,* 186 Cal.App.4th at p. 765.)  Appellants' opposition was due and filed on August 27, 2024.  They admittedly did not file the Liu declaration until September 4, 2024, one day before respondents' reply was due and six days before the scheduled hearing on the motion.  The only explanation offered was Chu's vague statement in appellants' improper sur-reply that he was unable to finalize the declaration until August 30 for "personal reasons."  Appellants offered no explanation for why Chu purportedly finalized the declaration on August 30 but did not file it until September 4, 2024.  The court found Chu's explanation inadequate.  It further found the explanation lacked credibility because Chu claimed the declaration was finalized on August 30, but it was not signed by Liu until September 1, 2024.  Contrary to appellants' suggestion, the court's note of this date discrepancy did not show that it was simply "miffed," but further undercut counsel's already tepid explanation for the late submission.

On these facts, it was not an abuse of discretion for the court to find that appellants had not established good cause for the late filing.  (See

---

[4]      We similarly reject appellants' argument that the trial court "issued inconsistent rulings with regard . . . to court records from the Ohio case."  Appellants have not identified any specific evidentiary admission or exclusion that was in error or the legal basis for such a claim.  We therefore need not consider it further.  (See *Benach, supra,* 149 Cal.App.4th at p. 852.)

*Mackey, supra,* 31 Cal.App.5th at p. 657 [not an abuse of discretion to exclude late filing due to "upload error," where plaintiffs did not request continuance]; *Bozzi, supra*, 186 Cal.App.4th at p. 765 [no error to exclude sur-reply and declaration filed without leave].)  While appellants contend the trial court should have exercised its discretion differently, they have not shown any abuse of discretion in excluding the late-filed declaration.

Appellants argue that the Liu declaration was highly probative and crucial to their opposition, while also claiming that its filing one day before respondents' reply was due and six days before the hearing was not prejudicial.  They ignore that it was their burden to establish good cause for the belated filing.  Moreover, appellants suggest that the court should have attempted to "mitigate the untimeliness of the filing" by allowing appellants "a continuance and opportunity to have the declaration considered on the merits."  The party opposing summary judgment may seek a continuance of the hearing "upon a good faith showing *by affidavit* that a continuance is needed to obtain facts essential to justify opposition to the motion."  (*Lerma v. County of Orange* (2004) 120 Cal.App.4th 709, 715, citing § 437c, subd. (h).)  But appellants did not request a continuance or make any such showing in their opposition, the Liu declaration, or their sur-reply.  Appellants did not appear at the hearing and the parties present submitted on the tentative.  As such, they have not demonstrated an entitlement to a continuance under section 437c.

Appellants further contend there was no prejudice from the late filing because Liu's testimony was "referenced" in their timely opposition papers.  As such, the belated submission should have been "deemed a minor, curable, procedural defect."  In Chu's declaration submitted in support of the opposition to summary judgment, Chu obliquely stated that Liu "will testify" as to the date she received a document. Chu did not mention a forthcoming Liu declaration or offer any further context or explanation.  Appellants' suggestion that Chu's statement provided "notice" of Liu's declaration to respondents is therefore without merit.

As a final note, appellants' contention that the trial court "went out of its way" to exclude their evidence, while suggesting the court showed preferential treatment toward respondents' evidence is not well taken.

Appellants have not pointed to any evidence of unfair treatment in the record; indeed, the trial court's thorough order demonstrates its careful review and consideration of the parties' admissible evidence and proper weighing of their respective burdens on summary judgment. Appellants' counsel's commentary is both unprofessional and unhelpful to deciding the issues on appeal. "Appellant's counsel would be well advised to refrain from incivility in the future." (*WasteXperts, Inc. v. Arakelian Enterprises, Inc.* (2024) 103 Cal.App.5th 652, 667; Cal. Rules of Court, rule 9.7 [attorney oath to "conduct myself at all times with dignity, courtesy and integrity"]; Los Angeles County Superior Court Rules, App. 3.A ["Counsel should always deal with parties, counsel . . . court personnel and the judge with courtesy and civility."].)

## DISPOSITION

The order granting summary judgment is affirmed. Respondents are entitled to their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.


We concur:



ZUKIN, P. J.



MORI, J.

17